IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARC RATNER and SUSAN RATNER,<br><br>Plaintiffs,<br>v.<br><br><br>SKYWEST, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS**<br><br>Case No. 4:23-cv-00030-DN-PK<br><br>District Judge David Nuffer |

Defendant SkyWest, Inc. ("SkyWest") filed a Motion to Dismiss[1] arguing that Marc and Susan Ratners' Complaint for personal injury and loss of consortium was filed outside the four-year statute of limitations provided under Utah law.[2] Because the Ratners timely filed the instant their action under the Utah Savings Statute, the motion is DENIED.

**Contents**

FACTUAL BACKGROUND ........................................................................................................... 2
PROCEDURAL HISTORY.............................................................................................................. 3
STANDARD OF REVIEW .............................................................................................................. 6
ANALYSIS ....................................................................................................................................... 6
   The court may take judicial notice of the previous stages of this litigation ............................. 7
   The Ratners timely filed their First Utah Action ...................................................................... 8
      Determining whether the Utah Borrowing Statute applies in this case................................. 9
      The Utah Borrowing Statute requires analyzing where the claims arose............................. 9
      The Utah Borrowing Statute incorporates Utah's choice-of-law rules ............................. 10
      Under Utah's choice-or-law rules, the Ratners' claims arose in either Indiana or Utah.... 14
      Assuming that the claims arose in Indiana, the Utah Borrowing Statute does not apply... 16
   Under the Utah Savings Statute, the Ratners timely filed the instant action ........................... 19
ORDER ........................................................................................................................................... 20

---

[1] Defendant SkyWest, Inc.'s Notice of Intent and Renewed Motion to Dismiss Plaintiffs' Amended Complaint ("Renewed Motion to Dismiss"), docket no. 28 at 2, filed February 26, 2024.

[2] *Id.*

## FACTUAL BACKGROUND

The Ratners allege that Mr. Ratner was seriously injured on a SkyWest-operated flight after the nosewheel steering failed and the plane ran off the runway.[3] Specifically, they assert that on February 2, 2019, Mr. Ratner was a passenger on SkyWest-operated flight number DL3962 from South Bend, Indiana, to Detroit, Michigan.[4] Mr. Ratner was seated in the first row of seats with the bulkhead in front of him.[5] After "touchdown and rollout on the runway . . . the Pilot . . . attempted to exit the active runway via the high speed taxiway when the aircraft's nosewheel steering failed and caused the aircraft to run off the active runway and/or taxiway."[6] Additionally, they allege, when "the aircraft abruptly stopped, [Mr. Ratner] was forcibly thrown forward and into the bulkhead, causing him serious injury,"[7] and that Mr. Ratner "suffered and continues to suffer from serious, debilitating injuries requiring medical treatment."[8] The Ratners allege, among other things, that "the aircraft's nosewheel failure was not a new event amongst SkyWest's aging fleet,"[9] and that Mr. Ratner's injuries were caused by SkyWest's negligence and by the negligence of

---

[3] Amended Complaint, docket no. 26 at ¶¶ 7, 13, filed February 12, 2024.

[4] *Id*. at ¶ 7.

[5] *Id*. at ¶ 17.

[6] *Id*. at ¶ 13.

[7] *Id.* at ¶ 17.

[8] *Id.* at ¶ 19.

[9] *Id.* at ¶ 15.

SkyWest's employees or agents—for which, the Ratners assert, SkyWest is liable under the doctrine of *respondeat superior*.[10]

## PROCEDURAL HISTORY

The Ratners are domiciled in Indiana,[11] and SkyWest is a Utah corporation that maintains its principal place of business in Utah.[12] On February 1, 2021, the Ratners filed an action in the United States District Court for the Northern District of Georgia against SkyWest, Delta Air Lines ("Delta"), and Delta Connection.[13] During the deposition of Mr. Ratner on November 19, 2021, counsel determined that Delta Connection was not an actual corporate entity and that SkyWest—not Delta—operated DL3962.[14]

On December 2, 2021, the Ratners filed an amended complaint, eliminating the Delta defendants and leaving SkyWest as the only named corporate defendant.[15] Four days later, the Georgia court issued an Order to Show Cause ("OSC"), questioning whether the court had subject-matter jurisdiction based on diversity and whether venue was proper.[16] According to the Ratners, the parties agreed that, with the dismissal of Delta as a defendant, the court lacked jurisdiction and venue was improper.[17] Therefore, on December 13, 2021, the parties "filed a joint notice of

---

[10] *Id*. at ¶¶ 8-12, 15-16, 26-40.

[11] *Id*. at ¶¶ 1-2.

[12] *Id*. at ¶¶ 3-4.

[13] Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss and Memorandum of Law ("Opposition Memorandum"), docket no. 15 at 3 (discussing *Ratner v. SkyWest Airlines, Inc.*, No. 1:21-cv-00486 (N.D. Ga. 2021)); *see also* Plaintiffs' Opposition to Defendant's Notice of Intent and Renewed Motion to Dismiss Plaintiffs' Amended Complaint, docket no. 29 ("Plaintiffs' Renewed Opposition Memorandum") (directing court to arguments in previously filed Opposition Memorandum).

[14] *Id*. at 4.

[15] *Id*.

[16] *Id*.

[17] *Id*.

voluntary dismissal,"[18] and on December 14, 2021, the Georgia court dismissed and terminated the case.[19]

Nearly one year later, on December 9, 2022, the Ratners filed a complaint in the District of Utah (the "First Utah Action").[20] On April 3, 2023, the Ratners requested issuance of a summons, but the court instead issued an OSC as to why the action should not be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure for failure to effect service of process on Defendant within ninety days.[21] The court ordered the Ratners to file, by April 12, 2023, "a motion to extend the time for service, specifying the time required, and showing good cause for the time requested and for the failure to complete service within 90 days after the complaint was filed."[22] The Ratners failed to timely respond to the show-cause order, so the court dismissed the action without prejudice on April 13, 2023.[23]

The Ratners then filed the instant action on April 18, 2023.[24] On June 22, 2023, SkyWest filed a Motion to Dismiss.[25] After the parties finished briefing the instant motion to dismiss, and as the court began to review the motion, the court questioned whether it had subject matter jurisdiction based on diversity—primarily because of the naming of several Doe Defendants whose domicile

---

[18] *Id.*

[19] *Id.*

[20] *Ratner v. SkyWest Airlines, Inc.*, No. 4:22-CV-00094 (D. Utah 2022) ("*First Utah Action*"), Complaint, docket no. 1, filed December 9, 2022.

[21] *First Utah Action*, Order to Show Cause ("OSC"), docket. no. 9, filed April 3, 2023; *see also* 4:23-cv-00030, Opposition Memorandum, docket no. 15 at 4-5. Contrary to the text in the court's docket, the Ratners state that they requested issuance of a summons in response to the OSC but that the court declined to issue the summons because of the pending OSC. The order of these events is immaterial to the decision.

[22] *First Utah Action*, Order to Show Cause, docket no. 9.

[23] *First Utah Action*, Order of Dismissal Without Prejudice ("Dismissal Order"), docket no. 10, filed April 13, 2023.

[24] Complaint, docket no. 1 at 10, filed April 18, 2024.

[25] Motion to Dismiss, docket no. 12, filed June 22, 2023.

had not been alleged.[26] Accordingly, the court entered an OSC on January 26, 2024.[27] On February 12, 2024, the Ratners timely responded to the OSC and also filed an Amended Complaint, eliminating any question about the court's subject matter jurisdiction.[28]

Subsequently, the court entered a Notice to SkyWest concerning the already briefed motion to dismiss and whether there was any need to rebrief the motion.[29] In response, on February 26, 2024, SkyWest filed a "Notice of Intent and Renewed Motion to Dismiss Plaintiffs' Amended Complaint ("Notice")."[30] In its document, SkyWest included the contents of its previous motion to dismiss with a few non-substantive changes, such as changing references to the Complaint to instead reference the Amended Complaint.[31] The Ratners then filed "Plaintiffs' Opposition to Defendants' Notice of Intent and Renewed Motion to Dismiss Plaintiffs' Amended Complaint ("Opposition Memorandum"), stating,

> The Notice of Intent and Renewed Motion incorporates the previous Motion to Dismiss and Reply and does not make any additional arguments that are not addressed by Plaintiffs' briefing. Thus, Plaintiff responds to the Renewed Motion by referring the Court to their Opposition and Sur Reply and request that the Court deny the Motion to Dismiss."[32]

On March 12, 2024, the Clerk of Court entered a "Notice of Deficiency," recharacterizing SkyWest's Notice as a "Renewed Motion to Dismiss" and re-filing the Ratners' Memorandum in Opposition to link it to SkyWest's Renewed Motion to Dismiss."[33] Skywest then filed its Reply

---

[26] Order to Show Cause, docket no. 24, filed January 26, 2024.

[27] *Id.*

[28] Response to Order to Show Cause, docket no. 25, filed February 12, 2024; Amended Complaint, docket no. 26.

[29] Notice to Defendant Regarding Pending Motion to Dismiss, docket no. 27, filed February 13, 2024.

[30] Renewed Motion to Dismiss, docket no. 28, filed February 26, 2024.

[31] *Id.*

[32] Plaintiffs' Renewed Opposition Memorandum, docket no. 29, filed March 11, 2024.

[33] Notice of Deficiency, docket no. 30, filed March 12, 2024.

Memorandum on March 25, 2024.[34] As instructed by the Ratners, their previously filed Sur-Reply memorandum has also been considered.[35]

## STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim, "'[a]ll well-pleaded *facts*, as distinguished from conclusory allegations, must be taken as true,' and the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party."[36]

The statute of limitations is an affirmative defense that a defendant must raise, and courts "typically require factual development before deciding whether a claim is timely."[37] But if the dates on which the pertinent acts occurred are not in dispute, then the date a statute of limitations accrues is a question of law suitable for resolution at the motion to dismiss stage.[38]

## ANALYSIS

The parties' briefing on SkyWest's motion to dismiss illuminates a technical and ever-evolving framework for analyzing whether the Ratners' claims are time-barred. In its opening brief, SkyWest makes the simple argument that the complaint "was filed outside of the four-year statute of limitations provided for under Utah law" and is therefore time-barred.[39]

In their Opposition Memorandum, the Ratners counter that they filed their First Utah Action within four years of Mr. Ratner's alleged injury, satisfying Utah's four-year statute of limitations

---

[34] Reply Brief, docket no. 32 filed March 25, 2024.

[35] Sur-Reply in Response to Defendant's Reply in Support of Motion to Dismiss ("Sur-Reply Memorandum"), docket no. 22, filed September 5, 2023; *see also* Plaintiffs' Renewed Opposition Memorandum, docket no. 31, referring court to previously filed briefs.

[36] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1080, 1105 (10th Cir. 2017) (adding emphasis and quoting *Ruiz v. McConnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)).

[37] *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 866 (10th Cir. 2023).

[38] *See id.*; *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022).

[39] Renewed Motion to Dismiss, docket no. 28 at 5 (citing Utah Code Ann. § 78B-6-706).

for personal-injury claims ("the Utah Statute of Limitations").[40] And because that action was dismissed without prejudice, and because Ratners refiled their suit within one year of dismissal, they argue that the Utah Savings Statute renders the instant action—the Ratners' second action in this court—timely.[41]

In its Reply Memorandum, SkyWest makes the new argument that "Plaintiffs' cause of action arose in Michigan, which has a shorter statute of limitations" than Utah's Statute of Limitations and, therefore, the Utah Borrowing Statute bars the Ratners' suit.[42] Because this argument based on Utah's Borrowing Statute had not previously been made, Ratners' Ex Parte Motion for Leave to File Sur-Reply Memorandum ("Sur-Reply") was granted.[43] In their Sur-Reply, the Ratners counter that the Utah Borrowing Statute does not apply. Moreover, they argue, even if it did apply, Indiana law—not Michigan law—would govern, and under the Indiana Savings Statute, the Ratners' claims are timely.[44]

As explained in detail below, Utah's Borrowing Statute does not apply in this case, and the Ratners timely filed their First Utah Action. Because the First Utah Action failed "otherwise than upon the merits," the Utah Savings Statute was triggered, rendering the instant action timely filed.

**The court may take judicial notice of the previous stages of this litigation**

SkyWest argues that because "Plaintiffs' Complaint makes no factual allegation about any previously filed Complaint," the court should not consider "Plaintiffs' arguments in their response

---

[40] *See* Opposition Memorandum, docket no. 15 at 2, 6 (citing Utah Code Ann. § 78B-2-307).

[41] *Id.* (citing the Utah Savings Statute, Utah Code Ann. § 78B-2-111).

[42] Reply Memorandum, docket no. 32 at 3, 8-10 (citing Utah Code Ann. § 78B-2-103; Mich. Comp. Laws Ann. § 600.5805).

[43] Order Granting Plaintiffs' Ex Parte Motion for Leave to File Sur-Reply Memorandum, docket no. 21, filed August 24, 2023.

[44] Sur-Reply Memorandum, docket no. 22 at 2, 5-10 (citing Ind. Code Ann. §§ 34-11-2-4, 34-11-8-1).

7

brief [that] go beyond the 'four corners of the complaint.'"[45] But in evaluating a motion to dismiss under Rule 12(b)(6), "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine" such as "matters of which a court may take judicial notice."[46] The Tenth Circuit has repeatedly confirmed that a court may take judicial notice of "its own files and records, as well as facts which are a matter of public record," without converting a motion to dismiss into a motion for summary judgment."[47] Because the Ratners' previously filed actions in the Northern District of Georgia and in this court are directly related to the instant action, judicial notice of those proceedings is taken.

### The Ratners timely filed their First Utah Action

To determine whether the Ratners timely filed the instant action, it is necessary to first determine whether the Ratners' timely filed their First Utah Action, which depends on whether the Utah Statute of Limitations or, alternatively, the Utah Borrowing Statute applies. The Ratners' First Utah Action was filed on December 9, 2022,[48] which was within four years of Mr. Ratner's alleged injury on February 2, 2019.[49] If the Utah Statute of Limitations applies,[50] then the Ratners timely filed their First Utah Action. If, however, the Utah Borrowing Statute applies, the analysis becomes more complicated.

---

[45] Reply Memorandum, docket no. 32 at 6 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

[46] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[47] *Johnson v. Spencer*, 950 F.3d 680, 705-706 (10th Cir. 2020); *see also Tal v. Hogan,* 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *St. Louise Baptist Temple v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979).

[48] First Utah Action, Complaint, docket no. 1.

[49] Amended Complaint, docket no. 26 at 2.

[50] *See* Utah Code Ann. § 78B-2-307; *Jenkins v. Percival,* 962 P.2d 796, 805 n.3 (Utah 1998) ("The statute of limitations for filing a personal injury action is four years.").

**Determining whether the Utah Borrowing Statute applies**

Because the court's jurisdiction is based on diversity, Utah law governs the question of whether the Ratners timely filed their action.[51] In Utah, "[s]tatutes of limitations are essentially procedural in nature,"[52] so "as a general rule, Utah's statutes of limitations apply to actions brought in Utah."[53] But the Utah Borrowing Statute provides "[a]n exception to this rule that the law of the forum governs limitation periods."[54] The Utah Borrowing Statute states in relevant part that, "[a] cause of action which arises in another jurisdiction, and which is not actionable in the other jurisdiction by reason of the lapse of time, may not be pursued in this state."[55]

**The Utah Borrowing Statute requires analyzing where the claims arose**

The Utah Supreme Court explained in *Federated Cap. Corp. v. Libby* that the Utah Borrowing Statute "creates a two-part test."[56] Under the *Libby* test, the first question is whether the Ratners' "cause[s] of action . . . ar[ose] in another jurisdiction."[57] Then, if the causes of action arose elsewhere, we must determine whether the claims are time-barred in the jurisdiction in which they arose.[58] And if the causes of action are barred in the other jurisdiction, then this court should "adopt that foreign jurisdiction's time limitations."[59]

---

[51] *See Brady v. UBS Fin. Servs., Inc.,* 538 F.3d 1319, 1323 (10th Cir. 2008); *see also U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009) ("A federal court applies the choice of law rules of the state in which the district court sits.").

[52] *Lee v. Gaufin*, 867 P.2d 572, 575 (Utah 1993).

[53] *Fin. Bancorp, Inc. v. Pingree & Dahle, Inc.*, 880 P.2d 14, 16 (Utah Ct. App. 1994).

[54] *Id.*

[55] Utah Code Ann. § 78B-2-103.

[56] *Federated Cap. Corp. v. Libby*, 384 P.3d 221, 227 (Utah 2016).

[57] *Id.* (alterations in original).

[58] *Id.*

[59] *Id.*

9

The Utah Supreme Court has emphasized that the Utah Borrowing Statute does not "merely *apply* a statute of limitations from another jurisdiction, but borrows or adopts that statute, making that statute a *Utah* statute of limitations for purposes of a particular dispute."[60] By that logic, even when the Utah Borrowing Statute requires a court to dismiss an action because it is time-barred by the jurisdiction in which the causes of action arose, the court applies Utah law—not the foreign jurisdiction's law—to dismiss the action.

If the Ratners' causes of action arose in a foreign jurisdiction and were time-barred in that jurisdiction at the time they filed their First Utah Action, then the Utah Borrowing Statute applies, rendering the Ratners' suit time-barred.[61] Thus, to determine whether the Utah Borrowing Statute applies, we must first determine where the Ratners' claims arose.

**The Utah Borrowing Statute incorporates Utah's choice-of-law rules**

SkyWest argues, without analysis or support, that "Plaintiffs make clear in their Complaint and Amended Complaint that this cause of action "arose out of the landing that occurred in Detroit, Michigan and that neither Plaintiffs are citizens of the State of Utah."[62] Therefore, SkyWest argues, the "limitations period of Michigan applies."[63] Plaintiffs disagree that their claims arose in Michigan and argue that under the "most significant relationship" approach described in the Restatement (Second) of Conflict of Laws ("the Restatement"), their claims arose in Indiana.[64]

As Justice Lee recognized in his concurrence in *Libby*, because those parties had conceded that the cause of action "arose" in Pennsylvania, there was no need for the Utah Supreme Court to

---

[60] *Id.* at 226 (emphases added).

[61] *See id.*

[62] Reply Memorandum, docket no. 32 at 8-9.

[63] *Id.*

[64] Sur-Reply Memorandum at 5-8, docket no. 22.

10

address the meaning of the term "arises in" found in the Utah Borrowing Statute.[65] Justice Lee noted that "[w]hen the argument is squarely raised, our courts should decide whether the borrowing statute's 'arises in' formulation is a reference to [Utah's] applicable choice-of-law rules or is dictated simply by the longstanding 'place of performance' test"[66]—or, for torts like those alleged in the Ratners' suit, a "place-of-injury" test.

It does not appear that any Utah court has addressed this precise question. "In cases arising under diversity jurisdiction, the federal court's task is not to reach its own judgment regarding the substance of the common law, but simply to 'ascertain and apply the state law.'"[67] And when, as in this case, there is no clear state law to apply, then "the [court] must attempt to predict what the state's highest court would do."[68]

More than a century ago, the Utah Supreme Court "interpreted the borrowing statute as incorporating the place of performance test."[69] But Utah's choice-of-law principles have changed considerably since then, and it "seems possible to interpret the statute as embracing whatever evolving standard [Utah] law has adopted for choosing the governing law."[70] The Utah Supreme Court long ago abandoned the place-of-injury test for torts, utilizing instead "the 'most significant relationship' approach as described in the Restatement to determine which state's laws should apply to a given circumstance."[71] Based on the history and purpose of the Utah Borrowing Statute, as

---

[65] *Libby*, 384 P.3d at 231 (Lee, J., concurring).

[66] *Id.*

[67] *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).

[68] *Id.*

[69] *Id.* (citing *Lawson v. Tripp*, 95 P. 520, 522–23 (Utah 1908)).

[70] *Id.*

[71] *Waddoups v. Amalgamated Sugar Co.*, 54 P.3d 1054, 1059 (Utah 2002).

discussed below, the Utah Supreme Court likely would interpret the Utah Borrowing Statute to incorporate a choice-of-law analysis, rather than a place-of-injury test.

First, the Utah Supreme Court has recognized that the Utah Borrowing Statute was "literally 'borrowed' from" California's nearly verbatim borrowing statute.[72] The manner in which California interprets its borrowing statute is therefore instructive. To determine where a cause of action arose under the California Borrowing Statute, California courts apply a choice-of-law analysis, not a place-of-injury test.[73] And while the Utah and California Borrowing Statutes no longer share identical language (due to the Utah Legislature's slight revision of the Utah Borrowing Statute in 2008),[74] the Utah legislator who sponsored the revision confirmed "that there is no actual change to law."[75]

Second, several other states also interpret their borrowing statutes to incorporate a choice-of-law analysis, rather than a place-of-injury test.[76] The Restatement—which Utah has adopted[77]—supports this interpretation, encouraging courts to apply "the statute of limitations of [the] state having a more significant relationship to the parties and the occurrence."[78]

---

[72] *Allen v. Greyhound Lines, Inc.*, 583 P.2d 613, 615 (Utah 1978) (citing Cal. Civ. Proc. Code § 361).

[73] *See McCann v. Foster Wheeler LLC*, 225 P.3d 516, 527 (Cal. 2010) ("[N]othing in [the California Borrowing Statute] indicates that this statute was intended to freeze the then-prevailing general choice-of-law rules into a statutory command, so as to curtail the judiciary's long-standing authority to adopt and modify choice-of-law principles pursuant to its traditional common law role.").

[74] TITLE 78 RECODIFICATION AND REVISION, 2008 Utah Laws Ch. 3 (H.B. 78).

[75] *Title 78 Recodification and Revision: Hearing on H.B. 78 Before the S. Judiciary, L. Enforcement, and Crim. Just. Standing Comm.*, 2008 Leg., 57th Sess. (Utah 2008) (statement of Rep. Jackie Biskupski).

[76] *See, e.g.*, *Libby,* 84 P.2d at 230 n.36 (Lee, J., concurring) (collecting cases from Illinois, Florida, and Oregon).

[77] *Waddoups*, 54 P.3d at 1059.

[78] RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142(2)(b) (AM. L. INST. 1988) [hereinafter RESTATEMENT]; *see also id.* cmt. b ("In the light of the recommendation . . . to give statutes of limitations the same analysis as other substantive choice-of-law issues, borrowing statutes should probably either be repealed or amended to conform to the policies of this Section.").

Third, the purpose underlying the Utah Borrowing Statute supports an interpretation that incorporates a choice-of-law analysis. "[T]he 'borrowing' statute . . . stands on the books for the purpose of preserving the worthwhile concepts of comity,"[79] and it "discourage[s] forum shopping."[80] If another jurisdiction's substantive law governs a dispute, but that jurisdiction's procedural law bars the suit "by reason of the lapse of time,"[81] then Utah shows comity to that another jurisdiction—and discourages forum shopping—by closing its own forum to that dispute, too. Interpreting the Utah Borrowing Statute to incorporate a choice-of-law analysis would require Utah courts to bar only those claims that are governed by another jurisdiction's substantive law, which aligns with the Utah Borrowing Statute's purpose.

If the Utah Borrowing Statute were to instead incorporate a place-of-injury test, then absurd results could arise. Imagine, for example, a hypothetical case in which a plaintiff is injured in Michigan (which has a shorter statute of limitations than Utah for personal injuries). But in this hypothetical situation, assume that Utah has a more significant relationship to the parties and the occurrence. A Utah court would therefore conclude that Utah substantive law governs the plaintiff's claim. But if the Utah Borrowing Statute were to incorporate a place-of-injury test instead of a choice-of-law analysis, the Utah court would adopt the Michigan statute of limitations, which would thereby preclude Utah courts from adjudicating this claim—even though the claim is governed by Utah substantive law. That outcome does not comport with the stated purposes of the Utah Borrowing Statute, which animates why the Utah Borrowing Statute should be interpreted to incorporate a choice-of-law analysis, rather than a place-of-injury test.

---

[79] *Allen*, 583 P.2d at 615.

[80] *Libby*, 384 P.3d at 228 (majority opinion).

[81] Utah Code Ann. § 78B-2-103.

Accordingly, in determining where the Ratners' claims arose, the Utah Supreme Court would conclude that Utah Borrowing Statute incorporates Utah's choice-of-law rules, rather than a place-of-injury test.

**Under Utah's choice-or-law rules, the Ratners' claims arose in either Indiana or Utah**

To determine where the Ratners' claims arose (and given the absence of "an effective choice of law analysis by the parties"),[82] this opinion considers which state "has the most significant relationship to the occurrence and the parties under the principles stated in § 6 [positing several choice-of-law principles] in the Restatement."[83] Those principles include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.[84]

Because the Ratners' claims sound in tort, the "[c]ontacts to be taken into account in applying [those] principles . . . include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."[85] In practice, Utah courts do not actually analyze these contacts in light of the § 6 principles; rather, they find that the state with the most contacts, "evaluated

---

[82] *First Am. Title Ins. Co. v. Barron*, 2023 WL 6153645, at *4 (Utah Ct. App. 2023).

[83] *Forsman v. Forsman*, 779 P.2d 218, 219 (Utah 1989) (quoting RESTATEMENT § 145); *Waddoups*, 54 P.3d at 1059.

[84] *Volonte v. Domo, Inc.,* 528 P.3d 327, 347 (Utah Ct. App. 2023).

[85] *Forsman*, 779 P.2d at 219 (quoting RESTATEMENT § 145); *see also Waddoups*, 54 P.3d at 1060 (applying "Section 145 of the [Restatement] . . . as the Utah test for determining which state has the most significant relationship to a tort case.").

according to their relative importance with respect to the particular issue,"[86] has the "most significant relationship."[87]

Accepting the factual allegations in the Complaint as true and drawing all reasonable inferences in favor of the Ratners,[88] their claims arose in either Indiana or Utah—not in Michigan. SkyWest is incorporated and maintains its principal place of business in Utah,[89] and it is reasonable to infer that some of SkyWest's allegedly negligent decision-making, including its alleged failure to warn its personnel of the potential for nosewheel failure events, likely transpired at its headquarters in Utah.[90] The Ratners are citizens of Indiana,[91] and as an Indiana resident, Mr. Ratner likely purchased his ticket on DL3962 in Indiana.[92] SkyWest operates in Indiana.[93] Additionally, SkyWest's alleged failure to warn its personnel and passengers on DL3962 presumably occurred (at least in part) in Indiana.[94] Moreover, SkyWest's alleged failure to train its maintenance personnel—or, at least, those agents and employees relevant to this case—likely occurred (at least in part) in Indiana, which is the final location from which the aircraft departed before the aircraft's allegedly foreseeable mechanical failure.[95] And for the same reason, SkyWest's alleged failure to

---

[86] *Waddoups*, 54 P.3d at 1060.

[87] *See, e.g., Heaps v. Nuriche, LLC*, 345 P.3d 655, 657 (Utah 2015) (affirming lower court's ruling that "Utah law applies because, under the most significant relationship test, 'the majority of [the relevant] contacts were in Utah.'" (internal citations omitted)); *see also Dutta v. Amica Mut. Ins. Co.*, No. 4:20-CV-00031-DN, 2023 WL 4315793, at *7 (D. Utah July 3, 2023) ("Utah negligence law will apply because Utah has the most connections to the collision that injured [the plaintiff.").

[88] *See, e.g., Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) ("'We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the' plaintiff." (quoting *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)).

[89] Amended Complaint, docket no. 26 at ¶ 3.

[90] *See id.* at ¶¶ 3, 16.

[91] *See id.* at ¶¶ 1–2.

[92] *See id.* at ¶¶ 1, 7.

[93] *See id.* at ¶¶ 4, 7.

[94] *See id.* at ¶¶ 14-16.

[95] *See id.*.

maintain or repair the aircraft nosewheel likely occurred (at least in part) in Indiana, immediately before the aircraft's departure.[96] The injury itself occurred in Michigan,[97] and the Captain and First Officer's allegedly unsafe operation of the aircraft took place in Michigan,[98] but those facts are the only connections to Michigan.

In the absence of any choice of law analysis by the parties and without additional discovery, it is difficult to determine with certainty whether the Ratners' claims arose in Indiana or Utah. But it is clear that they did not arise in Michigan. Although Michigan was the site of Mr. Ratner's injury, the state has no other connection to the Ratners' claims. And "the fortuitous occurrence of the crash in [Michigan] is not a compelling reason" to find that the Ratners' claims arose in Michigan.[99] The Ratners' claims arose in either Indiana or Utah, but to determine whether the Utah Borrowing Statute applies in this case, this opinion will assume that the claims arose in Indiana because the Utah Borrowing Statute would not apply if the claims arose in Utah.

**Assuming that the claims arose in Indiana, the Utah Borrowing Statute does not apply**

Turning to the second step in *Libby*, we must consider whether the Ratners' action would have been time-barred in Indiana at the time they filed the First Utah Action.[100] If their action would not have been time-barred in Indiana, then the Utah Borrowing Statute would not apply to bar the instant action.[101]

---

[96] *See id.*

[97] *See id.* at ¶¶ 13, 17.

[98] *See id.*

[99] *Jackett v. Los Angeles Dep't of Water & Power*, 771 P.2d 1074, 1077 (Utah Ct. App. 1989) (declining to apply Utah law, even though helicopter crash occurred in Utah); *see also Am. Nat. Fire Ins. Co. v. Farmers Ins. Exch.*, 927 P.2d 186, 190 (Utah 1996) ("[T]he location of the accident is not sufficient to outweigh numerous other contacts.").

[100] *Libby*, 384 P.3d at 227.

[101] *Id.*

16

Indiana's statute of limitations for personal-injury claims is two years.[102] Indiana courts would have therefore allowed the Ratners to file suit on or before February 2, 2021. The Ratners filed their initial action in the Northern District of Georgia on February 1, 2021,[103] which was timely under Indiana's statute of limitations. The question, then, is whether the Ratners' suit in Georgia—and its subsequent dismissal without prejudice—triggered the Indiana Savings Statute, extending their time to file suit.

Under the Indiana Savings Statute, "if a plaintiff commences an action and . . . fails in the action from any cause except negligence in the prosecution of the action," then "a new action may be brought not later than . . . three (3) years after the date of the [failure]."[104] The Indiana Savings Statute "is designed to ensure that the diligent suitor retains the right to a hearing in court until he receives a judgment on the merits. Its broad and liberal purpose is not to be frittered away by narrow construction."[105]

The Ratners' action in Georgia falls within the scope of the Indiana Savings Statute. After the Ratners and SkyWest jointly agreed to dismiss the case in Georgia, the action failed not because of negligence in its prosecution but rather because the Northern District of Georgia lacked subject-matter jurisdiction.[106] The Indiana Savings Statute was thereby triggered, allowing the Ratners three additional years to refile their claims. The fact that the Ratners initially brought their suit in Georgia, rather than in Indiana, does not change the analysis.[107]

---

[102] Ind. Code Ann. § 34-11-2-4.

[103] *Ratner v. SkyWest Airlines, Inc.*, No. 1:21-cv-00486 (N.D. Ga. 2021).

[104] Ind. Code Ann. § 34-11-8-1.

[105] *Vesolowski v. Repay*, 520 N.E.2d 433, 434 (Ind. 1988).

[106] *See supra* at 2-3; *cf. Cox v. Am. Aggregates Corp.*, 684 N.E.2d 193, 195 (Ind. 1997) ("[T]he statute enables an action dismissed for lack of personal jurisdiction in one state to be refiled in another state despite the intervening running of the statute of limitations.").

[107] *See Basham v. Penick*, 849 N.E.2d 706, 710 (Ind. Ct. App. 2006) (finding that Indiana Savings Statute allowed plaintiff to refile claims after first action failed in Kentucky court); *Abele v. A. L. Dougherty Overseas, Inc.*, 192 F.

Additionally, while the Indiana Savings Statute does not generally apply when a plaintiff voluntarily dismisses an action,[108] the Ratners should not be deprived of the benefit of the Indiana Savings Statute when the Northern District of Georgia would have dismissed the action for lack of subject matter jurisdiction in any event. Thus, the joint dismissal by SkyWest and the Ratners after the Georgia court's entry of an OSC regarding subject matter jurisdiction should not have the effect of penalizing the Ratners, especially considering that the joint dismissal preserved judicial resources by removing the burden on the Northern District of Georgia to dismiss the case. Accordingly, based on the Indiana Supreme Court's mandate to construe the Indiana Savings Statute broadly in light of its liberal purpose,[109] the Indiana Savings Statute was triggered after the parties dismissed the Georgia action on December 14, 2021.

The Indiana Savings Statute thus allowed the Ratners to refile their claims within three years of December 14, 2021. The Ratners filed their claims in Utah within one year—on December 9, 2022.[110] Because their claims were not time-barred in Indiana, the Utah Borrowing Statute does not apply in this case, and the Ratner's First Utah Action was governed by the four-year Utah Statute of Limitations. The Ratners therefore timely filed their First Utah action within four years of the injury.[111]

**Assuming that the claims arose in Utah, the Utah Borrowing Statute does not apply**

Alternatively, even if the Ratners' claims arose in Utah (and not Indiana), then the Utah Borrowing Statute is inapplicable because the Utah Borrowing Statute applies only if the claims

---

Supp. 955, 957 (N.D. Ind. 1961) (finding that Indiana Savings Statute allowed plaintiff to refile claims after first action failed in Ohio court).

[108] *See, e.g.*, *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239, 1244 (Ind. 2010).

[109] *Id.*

[110] *First Utah Action*, Complaint, docket no. 1.

[111] *See* Utah Code Ann. § 78B-2-307.

arose in a foreign jurisdiction. Rather, the Utah Statute of Limitations would apply, and as stated above, they timely filed their First Utah Action.

### Under the Utah Savings Statute, the Ratners timely filed the instant action

Because the Ratners timely filed the First Utah Action, the only remaining question is whether they timely filed the instant action after the court dismissed the First Utah Action without prejudice on April 13, 2023.[112] The Ratners filed their second suit in this court on April 18, 2023—just five days after the court dismissed the First Utah Action.[113] The instant suit is not time-barred if the Utah Savings Statute applies.[114]

The Utah Savings Statute provides in relevant part that:

If any action is timely filed and . . . the plaintiff fails in the action or upon a cause of action otherwise than upon the merits, and the time limited either by law or contract for commencing the action has expired, the plaintiff . . . may commence a new action within one year after the reversal or failure.[115]

Like the Utah Borrowing Statute, the Utah Savings Statute modifies Utah's statutes of limitations,[116] and here, it renders the instant action timely filed for the following two reasons.

First, because the Ratners timely filed the First Utah Action, and that action failed "otherwise than upon the merits,"[117] the Utah Savings Statute applies. Unlike the Indiana Savings Statute, which, as discussed above, is inapplicable if the action fails due to negligence in

---

[112] *First Utah Action*, Order of Dismissal, docket no. 10.

[113] Complaint, docket no. 1.

[114] *See* Utah Code Ann. § 78B-2-111.

[115] *See id.*

[116] *See Norton v. Hess*, 374 P.3d 49, 51–52 (Utah Ct. App. 2016) ("Despite the rigor with which [Utah's] statutes of limitations are usually applied, Utah's savings statute provides an exception in a limited circumstance"); *see also Cook v. G.D. Searle & Co.*, 759 F.2d 800, 802 (10th Cir. 1985) ("[T]he state's tolling rules, as 'an integral part of the several policies served by the statute of limitations,' are generally to be applied [by federal courts exercising diversity jurisdiction] as well." (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751 (1980)).

[117] Utah Code Ann. § § 78B-2-111.

prosecution,[118] the Utah Savings Statute does not have such an exclusion. The Utah Savings Statute thus applies even though the dismissal of the First Utah Action was the result of the Ratners' failure to timely serve SkyWest.[119]

Second, the remaining element that must be satisfied to trigger the Utah Savings Statute is that the "time limited . . . for commencing the action ha[d] expired."[120] In this action, the time to file an action had indeed expired because Utah's four-year statute of limitations would have barred these claims beginning on February 2, 2023, more than two months before the Ratners filed the instant action.[121] Thus, the Utah Savings Statute applies, saving the Ratners' action from being time-barred.

## ORDER

IT IS HEREBY ORDERED that SkyWest's Renewed Motion to Dismiss is DENIED because the Ratners timely filed their Complaint in the instant action.

Signed May 1, 2024.

BY THE COURT

David Nuffer
United States District Judge

---

[118] Ind. Code Ann. § 34-11-8-1.

[119] *Callahan v. Sheaffer*, 877 P.2d 1259, 1262 (Utah Ct. App. 1994) (reversing lower court's decision determining that the plaintiff could not invoke the Utah Savings Statute after failing to serve defendants).

[120] Utah Code Ann. § 78B-2-111

[121] *Id.*